Dorothy Newcombe v. Commissioner. Warren Newcombe v. Commissioner.
Newcombe v. Commissioner
Docket Nos. 20613, 20624.
United States Tax Court
1951 Tax Ct. Memo LEXIS 323; 10 T.C.M. (CCH) 152; T.C.M. (RIA) 51045; February 19, 1951
*323 During 1942 and 1943 Warren Newcombe paid his divorced wife, Hazel Newcombe, $18,954 and $21,060.60, respectively, pursuant to the terms of a property settlement agreement, and a divorce decree which required him to pay her three-sevenths of his net earnings for a 9-year period for her support and maintenance, and the support and maintenance of their minor children. Respondent determined that $2,400 of the annual periodic payments to Hazel were for support of minors and not deductible as alimony under section 23 (u), I.R.C. Held, no sum was fixed by the terms of the divorce decree or the written instrument as payable for the support of minor children and respondent erred in reducing the alimony deduction by $2,400 per annum; distinguishing Robert W. Budd, 7 T.C. 413 and Warren Leslie, Jr., 10 T.C. 807. Warren and Dorothy Newcombe reported his earnings during the taxable years 1942 and 1943 upon the community property basis and divided equally his alimony payments to Hazel. Respondent denied that Dorothy was entitled to deduct any part of Warren's separate alimony obligation from her income. Held, since Warren's earnings were community *324 income and were reported by petitioners upon a community property basis, Dorothy is entitled to offset her share of the community income by one-half of the periodic payments made therefrom; following Robert A. Sharon, 10 T.C. 1177. Woodson W. Wallace, Esq., 204 Higgins Bldg., Los Angeles, Calif., for the petitioners. L. C. Aarons, Esq., for the respondent. RICE
Memorandum Findings of Fact and Opinion RICE, Judge: These proceedings involve deficiencies in income and victory taxes for 1943 in the amounts of $6,579.08 for Dorothy Newcombe and $6,525.71 for Warren Newcombe. The taxable year 1942 is involved because of the forgiveness feature of the Current Tax Payment Act of 1943. [The Facts] The stipulated facts are so found and are incorporated herein. Petitioners, husband and wife, reside in Los Angeles, California. They filed individual income tax returns for 1942 and 1943 with the collector of internal revenue for the sixth district of California. Their returns were filed on a community property basis. Warren Newcombe was employed during the taxable years as an art director with Metro-Goldwyn-Mayer Studio and the income reported by petitioners *325 on the community property basis consisted almost entirely of salary received by Warren from his employment as an art director. Warren Newcombe was formerly married to Hazel L. Newcombe. Two children were born of this marriage - Hermine and Sally Newcombe. On December 7, 1937, the children were two years and nine months, and nine months of age, respectively. On December 7, 1937, Hazel L. Newcombe filed an action for divorce against Warren Newcombe. On December 1, 1937, prior to filing the divorce action, Hazel and Warren had entered into a property settlement agreement in contemplation of the filing of the divorce action. Thereafter, proceedings were had in the divorce action and an interlocutory decree of divorce was entered in favor of Hazel on January 8, 1938. A final decree of divorce was duly entered on January 11, 1939. The property settlement agreement provided that Warren would pay Hazel: "* * * an amount equal to three-sevenths (3/7th) of his net earnings (as the term 'net earnings' is hereinafter defined) for a period of nine (9) years from the date hereof, payable in monthly installments commencing on or before the 15th day of December, 1937, and continuing monthly *326 thereafter on the 15th day of each month during said period. Said amounts shall be paid for the support and maintenance of Second Party [Hazel] and the support and maintenance of the said two children during said time, provided, however, that said payments shall cease upon the remarriage or death of Second Party, should she die or remarry during said nine year period. In this connection First Party [Warren] undertakes and guarantees to pay to Second Party not less than the sum of Two Hundred Dollars ($200.00) for each and every month during said period of time irrespective of First Party's net earnings during said time." The term "net earnings" was defined to mean "that amount which is earned by First Party from all sources during said period of time, * * *" less amounts for various taxes not here material. The property settlement agreement continues: "In addition to the foregoing payments First Party agrees to pay for the necessary expenses incurred by the said children or either of them or on their behalf in obtaining a college education and/or professional training. In this connection it is expressly agreed between the parties hereto that it is their intention and desire *327 that their said children shall receive every reasonable educational advantage and that they shall receive in addition to the best elementary and high school education, a college training, and that should they or either of them determine to follow a profession, that they should receive the opportunity of a college course in such profession as they or either of them may select; the institution of learning to which said children shall be sent shall at all times be one or more mutually agreeable to the parties hereto, and the reasonable expenses occasioned thereby which First Party hereinafter agrees to pay for the maintenance and support of said children, shall be paid for by the said First Party. First Party agrees that in the event of sickness, illness or emergency of any kind, or any unusual bill necessarily incurred for said children, or either of them, during their minority, the expenses of the same shall, in addition to the other payments herein provided to be made, be paid by the First Party, provided, however, First Party shall not be required to pay an amount in excess of FIFTY DOLLARS ($50.00) per month toward said expenses for both of the said children. "First Party does *328 further agree to pay to Second Party the sum of One Hundred Dollars ($100.00) per month for the maintenance and support of each child until each child shall have attained the age of eighteen (18) years, and thereafter until each child has secured a college education or a professional course of training as hereinabove provided, provided, however, First Party shall not be required to commence to pay said amounts to Second Party until Second Party shall have remarried within the aforesaid nine (9) year period, or until the expiration of the aforesaid nine (9) year period, whichever event shall first occur. The said sum of One Hundred Dollars ($100.00) per month, payable by the First Party to Second Party for the support and maintenance of each of said children, shall be considered a part of the payment of First Party's obligation to pay the reasonable cost and expenses incurred by said children in securing the said college education or professional training after they have each graduated from high school or institutions of learning similar to the high school. In the event First Party's net earning should at any time after the expiration of the said nine-year period be less than the sum *329 of Five Hundred Dollars ($500.00) per week, then First Party's obligations to pay One Hundred Dollars ($100.00) per month for each child shall be decreased proportionately; that is, the sum of Two Hundred Dollars ($200.00) per month shall be decreased in proportion to the decrease in salary in the ratio as the sum of Two Hundred Dollars ($200.00) per month bears to the sum of Five Hundred Dollars ($500.00) per week." By paragraph eighth of the property settlement agreement Hazel agreed that the payments therein provided for and the other property transferred to her by Warren were expressly accepted in lieu of all provisions for her support during her natural life and in "full payment, discharge and satisfaction of all obligations, or any thereof, on the part of" Warren "to maintain or support" her "or the children of the parties hereto during her or their natural life; * * *." In paragraph ninth it was provided that Hazel should have custody and control of the children. Warren was given the privilege of visiting them and Hazel was authorized to take the children outside the State of California if she elected so to do. By paragraph tenth Hazel agreed and acknowledged that conditioned *330 upon the payments to be made by Warren as and when due, the same should be in full payment, satisfaction, discharge and settlement of all claims, demands and liabilities of every nature, kind, character or description, and also as "full provision for her support and maintenance, and the support, maintenance, care and education of the said children of the parties hereto, and * * *." The interlocutory decree of divorce after reciting that Hazel was entitled to a divorce from Warren, ordered, adjudged and decreed that the property settlement agreement entered into on December 1, 1937 by the parties was in all respects a valid, subsisting and binding agreement. The decree ordered Warren to pay the amounts hereinabove set forth as agreed to by the parties in almost identical language with that contained in the property settlement agreement, and granted exclusive custody and control of the minor children to Hazel subject, however, to the right of Warren to visit the children "at such times and under such conditions as are specifically provided in such agreement." In the State of California matters relating to property are fixed and settled by the interlocutory decree of divorce rather *331 than by the final decree. On March 12, 1939, subsequent to the entry of the final decree of divorce, Warren and Dorothy Newcombe were married and at all times since have been husband and wife. During the years 1942 and 1943, Warren Newcombe, pursuant to the property settlement and interlocutory decree, made payments to Hazel in the respective amounts of $18,954.00 and $21,060.60. Such payments had their origin in the earnings of Warren Newcombe subsequent to his marriage to Dorothy. In his 1942 and 1943 income tax returns Warren deducted the sums of $9,477.00 and $10,530.30, respectively, as alimony paid to Hazel. In her 1942 and 1943 income tax returns Dorothy deducted the sums of $9,477.00 and $10,530.30, respectively, as her community one-half share of said alimony payments made by her husband to Hazel. [Opinion] In determining the deficiency against Warren Newcombe respondent held that his payments to his divorced wife during 1942 and 1943 did not qualify as periodic alimony payments and, therefore, were not allowable deductions in computing his net income. Respondent also determined that to the extent of $200.00 per month such payments by Warren were made for the support *332 and maintenance of Hermine and Sally Newcombe, his daughters, and, therefore, may not be deducted. In determining the deficiency against Dorothy Newcombe respondent held that no part of the payments made by Warren to Hazel in 1942 and 1943 "in discharge of his separate obligation for alimony and/or support and maintenance of their minor children, are allowable deductions from your income." Respondent now concedes that, except to the extent of $200.00 per month, the payments in the amounts of $18,954.00 and $21,060.60 made by Warren to his divorced wife during 1942 and 1943, respectively, qualify as periodic alimony payments and, therefore, are allowable deductions on his individual income tax returns in computing his net income. This concession on the part of respondent will be reflected in the final computation to be made in these cases under Rule 50. The issues to be decided are: (1) whether payments by Warren to his divorced wife during 1942 and 1943, to the extent of $200.00 per month, should be disallowed as deductions for the reason that such portions of his payments were made for the maintenance and support of his minor children as fixed by the property settlement agreement *333 and the interlocutory decree of divorce; and (2) whether, in any event, Dorothy Newcombe is entitled to deduct, upon the community property basis of reporting income, one-half of the payments made by her husband to his divorced wife during 1942 and 1943. Section 23 (u) of the Internal Revenue Code authorizes a husband to deduct alimony payments made within his taxable year, if the amounts so paid are includible under section 22 (k) in the gross income of the wife. Section 22 (k) provides, in part, that a wife who is divorced shall include in her gross income "periodic payments" received subsequent to such decree in discharge of a legal obligation which, because of the marital or family relationship, is imposed upon or incurred by such husband under such decree or under a written instrument incident to such divorce. Respondent's concession that Warren Newcombe's payments to Hazel during 1942 and 1943 qualify as periodic alimony payments and as an alimony deduction authorized by section 23 (u), except to the extent of $200 per month, resolves the first question raised by the pleadings. The second sentence in section 22 (k) provides as follows: "This subsection *334 shall not apply to that part of any such periodic payment which the terms of the decree or written instrument fix, in terms of an amount of money or a portion of the payment, as a sum which is payable for the support of minor children of such husband." It is the proper application of this statutory provision to our facts which gives rise to our first issue. Petitioners contend that no part of Warren Newcombe's periodic payments is fixed by the decree or agreement as a sum payable for the support of his minor children. Petitioners cite section 29.22(k)-1(d) [1] of respondent's regulations 111 and our decision in Dora H. Moitoret, 7 T.C. 640 (1946), as supporting their position. On the other hand, respondent contends that the property settlement agreement and the interlocutory decree fix periodic payments in the sum of $200 per month for the support of his minor children. Respondent relies upon Robert W. Budd, 7 T.C. 413 (1946), affd., 177 Fed. (2d) 198, (CA-6, 1947), and Warren Leslie, Jr., 10 T.C. 807 (1948). *335 The cited cases have construed property settlement agreements entered into under varying circumstances, and have consistently granted or denied the deduction depending upon whether the agreement viewed as a whole, earmarked, identified, or designated any fixed sum as included in the periodic payments which was for the support of the husband's minor child or children. To the same effect is Mandel v. Commissioner, 185 Fed. (2d) 50, CA-7, Oct. term 1950, affirming memorandum decision of this Court [8 TCM 445,]; cf. Robert Wood Johnson, 10 T.C. 647 (1948). The property settlement agreement in this case must be examined and construed in the light of respondent's concession that the payment of three-sevenths of Warren Newcombe's earnings to his divorced wife for a 9-year period were periodic payments within the meaning of section 22 (k), deductible by Warren and income to his divorced wife, except to the extent of $200 per month, which respondent contends was designated for the support of Warren's minor daughters. With respect to said 9-year period the agreement contains no specific provision earmarking, identifying, or designating a $200 monthly *336 payment out of the periodic payments as fixed for the support of the minor children. The agreement first mentions the sum of $200 per month when it provides that Warren undertakes and guarantees to pay Hazel a minimum of $200 per month during the 9-year period, irrespective of his net earnings during said time. This provision for the payment of at least $200 per month, in our opinion, falls in the same category as the provision for the payment to Hazel of three-sevenths of Warren's net earnings. Respondent admits that had the three-sevenths of Warren's net earnings provision stood alone, payments thereunder would not have been separable as between alimony and support for the children; but contends that the $200 per month guaranteed minimum provision is a "floor" which identifies, designates and fixes $200 per month as support payments. He also points out that the Budd agreement carried no such "floor" during the period the wife remained single, and therefore that these cases present a stronger picture for identifiability and separability of support payments than did the Budd case. We do not agree with respondent's construction of the Newcombe agreement, nor do we agree that these *337 cases are stronger for his position. The Budd agreement provided for the payment of a flat sum of $500 per month. But if the wife remarried the support payments for the son were $200 per month until he was ready for college. If the husband elected to send his son to a college preparatory school he agreed to pay tuition plus $1,500 for other expenses, and $200 per month to the wife for the son's support and maintenance, when not in school. If the son died or attained his majority the divorced wife received $300 per month so long as she remained single. We construed these and other provisions to mean that $200 per month was identifiable out of periodic payments as support payments for the son. The Budd case involved no agreed percentage of the husband's net earnings or income and there was no occasion to fix a "floor" or minimum amount which should be paid in any event for the support and maintenance of the wife and minor child. In the Warren Leslie, Jr., case, supra, the separation agreement provided for payment of stipulated percentages of the husband's income for the support and maintenance of the wife and minor children, and under certain contingencies separately for the two minor *338 children. Regardless of his income the husband was to pay at least $3,600 and not more than $6,000 per year. In addition he and his estate had to pay all school and college expenses of the children during their minority, except that if the wife received $6,000 in any given year she was to pay for the education of the daughter. The wife agreed that she would "faithfully and prudently expend for the support and maintenance of said children * * *" the sums paid her therefor by the husband. These provisions, coupled with the provision that in the event of the wife's remarriage, "the sum for the maintenance of the children shall not be less than $2,400 per annum" convinced this court that $2,400 of the periodic payments by Leslie during the taxable year were earmarked as support payments for minor children and we so held. Warren Newcombe also agreed to make certain payments to Hazel in the future, namely, the necessary expenses for their children to obtain a college education and/or professional training. At the time the property settlement agreement was executed the children were aged nine months, and two years and nine months. By the end of the 9-year term of periodic payments the children *339 would be approximately ten and twelve years of age, and Warren would no longer be obligated to pay Hazel three-sevenths of his net earnings. Obviously, Warren's periodic payments to Hazel would cease long before the time that he was required to pay the expenses of a college education or professional training for his children. The provisions for such payments on behalf of the children were not, therefore, any part of the periodic payments mentioned in section 22 (k). In addition to all other payments provided for in the agreement Warren Newcombe also agreed that, in the event of sickness, illness, or emergency of any kind, or any unusual bill necessarily incurred for his children or either of them during their minority, he would pay the expenses thereof, but not in excess of $50 per month for both children. Clearly such payments were contingent upon the happening of stated events and were not a part of the periodic payments which the terms of the property settlement agreement fixed as a sum payable for the support of minor children of the husband as required by section 22 (k). Upon the expiration of the 9-year period, or in the event that Hazel Newcombe remarried sooner, Warren *340 Newcombe agreed to pay Hazel $100 per month for the maintenance and support of each child until each child attained the age of 18 years and thereafter until each child secured a college education or a professional course of training as aforesaid. The payment of $100 per month by Warren to Hazel for support and maintenance of each of the children was to be considered a part of the payment of the reasonable costs and expenses incurred in securing a college education or professional training for the children. The obligation to make these payments of $100 per month for each of his children did not arise until after the 9-year period had expired, if Hazel remained unmarried, or if she married during the 9-year period, then his obligation to make periodic payments to Hazel ceased, and his obligation to pay her $100 per month for the maintenance and support of each child arose. These provisions for maintenance and support of his children are entirely separate and apart, therefore, from his agreement to pay his divorced wife three-sevenths of his net earnings for her maintenance and support and the maintenance and support of their children for the 9-year period or until she remarried during *341 that time. Finally, paragraphs 8, 9, and 10 of the property settlement agreement, which have no corresponding sections in the divorce decree, fix no portion of the periodic payments as a sum payable by the husband for the support of his minor children. Absent such specific designation respondent's regulations require the divorced wife to include the whole of such payments in her income as provided in section 22 (k). And, once it is established that such periodic payments are income to the wife under section 22 (k), then the husband is entitled to the deduction granted by section 23 (u). Dora H. Moitoret, 7 T.C. 640 (1946); Cf. Charles L. Brown, 7 T.C. 715 (1946); and Frank J. Kalchthaler, 7 T.C. 625 (1946). On the first issue we sustain the petitioners' contention. The second issue is whether Dorothy Newcombe is entitled to deduct one-half of the periodic payments made by Warren to his divorced wife during 1942 and 1943 in view of the fact that petitioners reported their income on a community property basis. Our findings show that the payments in question had their origin in the earnings of Warren Newcombe after his marriage to Dorothy and *342 that his earnings were reported on a community property basis. The question, therefore, is whether Dorothy is entitled to a deduction of one-half of the periodic payments made by Warren to his divorced spouse. Respondent concedes that a similar deduction was allowed to the wife in Robert A. Sharon, et al., 10 T.C. 1177 (1948), [2] cases involving the community property law of Texas, but he contends that the Sharon cases were erroneously decided. He urges that a deduction is a matter of legislative grace, that Dorothy can point to no statutory authority for dividing deductions with her husband, and that alimony payments are not so closely related to the production of community income, that it can be said that the deduction is divisible upon the same community basis that authorizes the division of the income. Notwithstanding this argument respondent concedes that under California community property *343 law a prenuptial debt or obligation of the husband is collectible out of community property, at least to the extent that such community property derives from the husband's earnings. Since the stipulated facts and our findings show that Warren Newcombe's earnings were community property, on the authority of the Sharon cases, supra, we hold that Dorothy Newcombe is entitled to offset her share of the community income by one-half of the periodic payments made from such community income. Decision will be entered under Rule 50. Footnotes
1. SEC. 29.22(k)-1. Alimony and separate maintenance payments - Income to former wife. * * *
(d) Payments for support of minor children. - Section 22 (k) does not apply to that part of any periodic payment which, by the terms of the decree or the written instrument under section 22 (k), is specifically designated as a sum payable for the support of minor children of the husband. The statute prescribes the treatment in cases where an amount or portion is so fixed but the amount of any periodic payment is less than the amount of the periodic payment specified to be made. In such cases, to the extent of the amount which would be payable for the support of such children out of the originally specified periodic payment, such periodic payment is considered a payment for such support. For example, if the husband is by terms of the decree required to pay $200 a month to his divorced wife, $100 of which is designated by the decree to be for the support of their minor children, and the husband pays only $150 to his wife, $100 is nevertheless considered to be a payment by the husband for the support of the children. If, however, the periodic payments are received by the wife for the support and maintenance of herself and of minor children of the husband without such specific designation of the portion for the support of such children, then the whole of such amounts is includible in the income of the wife as provided in section 22 (k). Except in cases of a designated amount or portion for the support of the husband's minor children, periodic payments described in section 22 (k) received by the wife for herself and any other person or persons are includible in whole in the wife's income, whether or not the amount or portion for such other person or persons is designated. [Italics supplied.]↩
2. On appeal these cases were remanded by the Court of Appeals for the Fifth Circuit pursuant to a stipulation of the parties with directions to enter a deficiency against the wife and an overpayment against the husband. The opinion of the Tax Court remains unchanged.↩